IN the MATTER OF the DISCIPLINARY PROCEEDINGS AGAINST
Paul Leo KELLY, Attorney at Law.

Supreme Court

*Nos. 81–968–D, 81–2261–D. Submitted on briefs October 6, 1982.—
Decided November 2, 1982.*
(Also reported in 325 N.W.2d 729.)

For the Board of Attorneys Professional Responsibility
the cause was submitted on the briefs of *Charles G.
Norseng*, Chippewa Falls.

For the respondent there was a brief by *Paul Leo Kelly*,
Eau Claire.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license revoked.*

This is an appeal by the Board of Attorneys Professional Responsibility (Board) from the report of the referee finding that the respondent attorney, Paul Leo

Kelly, an attorney licensed to practice law in Wisconsin since 1964, and who practices in Eau Claire, committed numerous violations of the court's rules governing the professional conduct of attorneys and recommending that the respondent's license to practice law be suspended for a period of one year and that he be ordered to pay the sum of $9,000 toward the costs of the disciplinary proceeding.

On May 15, 1981, the Board filed a complaint alleging 10 causes of action, with a total of 24 counts of unprofessional conduct, against the respondent. We appointed the Hon. Rodney L. Young as referee in the matter, and the respondent filed his answer to the complaint on June 25, 1981. Hearing before the referee was held on January 12 through January 15, 1982. One of the causes of action was subsequently dismissed by stipulation of the parties, and five counts of unprofessional conduct were dismissed on motion of the Board. The nine remaining causes of action, together with the respondent's answer and the referee's findings and conclusions as to each of them, are summarized as follows.

1. In a divorce action in which the respondent represented the husband, it was stipulated and, on October 20, 1978, ordered by the court that the client pay the sum of $8,777.50 to his former spouse. The client obtained a loan in the form of two checks, one for his personal obligations, including his fee to the respondent, and one in the amount of $8,777.50 in form made payable to himself and to the respondent's trust account. The court-ordered amount was not paid to opposing counsel, and on November 28, 1978 the court issued an order returnable 10 days later directing the respondent and his client to show cause why they should not be held in contempt for failure to make the ordered payment. On the day before the return date, the respondent obtained a bank money order in the specified amount, which was delivered to opposing

counsel on the following day. The source of funds used to purchase that money order is unknown.

During investigation by the Board, bank records disclosed that the loan check in the amount of $8,777.50 had been submitted on October 23, 1978 for payment of five money orders purchased by the respondent, payable to three individuals, himself and the Internal Revenue Service. The Board alleged in its complaint that the respondent misappropriated his client's funds for his own personal use, in violation of SCR 20.50.

When the client gave the respondent the check, the funds were to be held in trust. The respondent later testified that he did not place the money into a trust account and that he did not have a client trust account at the time those funds were received. It was alleged that his failure to deposit those funds into a client trust account violated SCR 11.05.

In his appearance before the district professional responsibility committee, the respondent claimed that his client brought the check for endorsement, that he endorsed the check and returned it to the client, who negotiated it and held the proceeds. It was alleged that such misrepresentation to the district committee, which had been previously made to Board staff, constituted failure to cooperate during the course of an investigation, in violation of SCR 22.07.

Opposing counsel in the divorce action testified before the district committee that he had telephoned the respondent's office at least 14 times in an effort to arrange a conference to discuss the findings of facts, conclusions of law and judgment in the divorce action in order that they be approved and submitted to the court. The judgment was eventually signed by the court without the respondent's approval being indicated thereon. Opposing counsel stated that he had made numerous demands on the respondent for the loan proceeds and that the re-

spondent promised on several occasions to deliver them but failed to do so. It was alleged that the respondent's failure to promptly deliver the funds necessitated the issuance of an order to show cause, constituting an unnecessary imposition upon opposing counsel and upon the judicial system. The Board alleged that such conduct tends to bring discredit upon the legal profession, in violation of SCR 20.34(3).

The respondent denied that he was to hold the funds in trust, that he misrepresented the whereabouts of the funds to the district committee and Board staff and that he failed to promptly deliver the funds pursuant to the court's judgment. He affirmatively alleged that the payment of money was to be in exchange for a change of custody of the parties' minor children from his client's former spouse to the client and that the delay in payment of the funds was intentional, prompted by his client's fear that, following payment, his former spouse would refuse to surrender custody of the children.

The referee found facts as alleged in the complaint and concluded that the respondent violated SCR 20.50(1), 11.05, 22.07 and 20.34(3).

2. The respondent filed a trust account certificate with the state bar of Wisconsin, as required by SCR 11.05(3), for the period January 1 through June 30, 1979, in which he certified that he maintained two trust accounts into which he deposited client funds. He subsequently testified before the district professional responsibility committee that both accounts were in fact closed at the time he filed the certificate and that the certificate was false. During the course of the Board's investigation it was also ascertained that the respondent failed to maintain a trust account from May 17 to September 30, 1977 and from May 7, 1978 until October 31, 1979. The respondent admitted the facts and affirmatively alleged that the certificate was incorrect but not intentionally misleading.

The referee found that the certificate contained inaccurate and misleading information in that one of the two listed accounts was, in fact, an inactive, dormant account, having a nominal balance, and the other was not a trust account. The referee concluded that the filing of the false certificate violated SCR 11.05(3) and that the failure to maintain a trust account during the specified periods, during which the respondent received and disbursed clients' funds, violated SCR 11.05.

3. The respondent failed to respond to the Board's investigation of a grievance filed by Wisconsin Judicare concerning the respondent's billing for his services and also failed to explain his failure to respond. The respondent admitted having failed to respond to the Board's requests and to cooperate with the Board until he appeared before the district committee, at which time he answered all questions put to him. Rejecting the respondent's claim that the Board's numerous requests were "onerous" and "burdensome," the referee found that the respondent repeatedly demonstrated that he failed to understand his obligation to make answer to a grievance when requested by the Board and to provide complete information of the material facts underlying the grievance. The referee concluded that such conduct violated SCR 22.07(3).

4. In 1977 a real estate transaction was closed and the sum of $8,895 was delivered to the respondent to be held in escrow. An informal escrow agreement was executed by which the respondent was authorized to pay specified bills, liens and fees on the property, with the balance remaining, approximately $3,600, to be paid to the respondent's client. The client subsequently complained to the local police that the respondent had misappropriated her funds, and the respondent was charged with a criminal violation. After trial to a jury on the charge, the respondent was acquitted. The respondent claimed that

his delay in disbursing funds to his client was due to the complications encountered in clearing title to the property.

The respondent issued a bank money order dated June 4, 1979, to the client in the amount of $770.56, and on June 14 the client met with the respondent to see his receipts for the items paid from the escrowed funds. On July 29, 1979, the respondent forwarded to the client a check in the amount of $1,288, representing overpayment of delinquent taxes.

The referee found that the respondent did not deposit his client's money into a trust account nor had a trust account arrangement with any bank at the time. The referee concluded that the respondent's failure to deposit the funds into a trust account and to segregate client funds from his own violated sec. 757.293(1), Stats., and SCR 20.50(1) and that his failure to maintain complete records of all funds of a client and his failure to promptly pay the funds to the client on request violated SCR 20.50 (2) (c) and (d).

5. The Board alleged that the respondent failed to deposit $14,000 from a client involved in an investment deal into a trust account, but the allegation was dismissed by the referee on the basis that an attorney-client relationship had not been established by clear and satisfactory evidence. However, the referee found that the respondent failed to respond to the Board's requests for information in connection with the grievance and concluded that he thereby violated SCR 22.07.

6. In 1978 and 1979 the respondent represented one of two persons charged with burglary. Following a trial at which the respondent argued that the burglary had been committed by another, who had been charged with intentionally receiving stolen property, the respondent's client was acquitted. Subsequently, the client was charged with intentionally receiving stolen property in connection with the same crime, and the

respondent again represented him and arranged to have the case dismissed without prejudice in return for which his client agreed to testify against two other persons who allegedly committed the burglary. The client gave a sworn statement to a court reporter, at which time the respondent was present. Although the respondent was unable to attend the subsequent hearing, the charge against his client was dismissed on February 23, 1979, pursuant to the agreement, following which the respondent terminated his attorney-client relationship with his client.

The respondent claimed that on February 23, 1979, one of the persons against whom his former client had testified requested a conference with him and retained him in connection with the burglary and other matters. The respondent stated that his instructions from the new client were to work out the best possible plea bargain. On February 26, 1979, the respondent obtained an assignment of the new client's trustee's interest in a $10,000 bond, and he then brought a motion for substitution of attorney, to which the new client's previous attorneys objected on the ground of a conflict of interest. Following a hearing, the court concluded that there would be a conflict of interest were the respondent to represent the new client, inasmuch as he would be placed in a position where he would have to attack the statement of his former client which he, the respondent, had helped formulate.

In testimony before the district professional responsibility committee, the respondent stated that there was no conflict because he did not intend to try the case, although he could not reveal that intention to the court. He stated, however, that if a suitable plea bargain could not be worked out, he would have tried the case. In his answer to the complaint in the disciplinary proceeding, the respondent affirmatively alleged that his statement to the

district committee that he would try the case if a satisfactory plea bargain could not be reached was made "tongue in cheek."

The referee found that the respondent, while representing the first client and before dismissal of charges against him, asked the district attorney what he expected to get out of the case against the other alleged participant and that he later sought to be substituted as that man's attorney. The referee found that the second man wanted the respondent to take over his defense on the burglary charge and that the respondent had no intention of representing him in the trial of the criminal matter but merely intended to obtain a settlement of the criminal charge, as well as to settle two other matters in which the person was involved. The respondent did not discuss with the person's attorneys of record any proposed deal which would include the criminal charge, nor did he inform them of his intention to take over their client's defense on that charge. The referee concluded that such conduct of the respondent tended to discredit him as a lawyer and to jeopardize the public's confidence in the legal profession, all in violation of SCR 20.28(1) and (2).

7. The Board alleged that the respondent neglected to pursue an appeal of his client's conviction by failing to compile the trial record and deliver it to this court and that he failed to furnish a written reply to the Board in response to his client's grievance in the matter. The respondent affirmatively alleged that the lapse of time since the event, the unwieldiness of the files and records, repeated requests for information from the Board and repeated conferences and hearings made it impossible for him to comply with the requests.

The referee found that the respondent agreed to represent the client and pursue an appeal, for which he asked for and received a fee of $3,500. The respondent did not proceed with the appeal beyond giving notice of intent to

appeal, did not page the record or cause it to be delivered to this court, and did nothing else in furtherance of the appeal, in violation of SCR 20.35 (1) (b). The respondent failed to respond to two notices from the Board of the client's grievance and did not fulfill his promise to Board staff that he would file a written reply and furnish requested documents within a specified period of time, in violation of SCR 20.07 (2).

8. It was alleged and the referee found that the respondent failed to respond to Board requests for written replies to several matters under investigation, failed to furnish requested materials, to provide authorization to examine bank account records in connection with his trust account, to send records concerning the matter summarized at number 5., above, and to send the list of all clients for whom he held trust funds or property from May, 1977, to November, 1978, all in violation of SCR 22.07 (2). The referee rejected the respondent's defense that compliance was impossible, that non-compliance was "cured" by information made available from other sources and that compliance was rendered extraordinarily difficult by the Board's failure to timely proceed with its investigation.

9. The respondent issued to a client a check drawn on his trust account which was subsequently returned unpaid for insufficient funds. The respondent claimed that his check was not honored because a check made payable to him from a party to the same transaction had been returned for insufficient funds, although bank records indicated that the respondent had disbursed funds from the second check to another client, to himself and to another business. The respondent's characterization of his relationship with the two business entities involved in the transaction was contradictory and incomplete, he did not provide the Board with a written statement explaining the series of transactions which had been requested, he

failed to disclose in his response to the Board the financial transactions between himself and another party which were integrally related to the dishonor of the trust account check and he failed to deposit client funds from this transaction into a trust account. The referee concluded that the failure to deposit the funds into a trust account and the conversion of those funds to the respondent's own use and benefit violated SCR 20.50(1) and that his failure to provide relevant information to the Board in its investigation and his failure to give an explanation of his dealings with the parties to the transaction violated SCR 22.07.

Together with his answer to the disciplinary complaint, the respondent filed a number of motions, including an objection to jurisdiction over his person on the ground that the complaint and order to answer were not signed by a court or a court commissioner, but by counsel for the Board, and on the ground that the complaint served on him was not "authenticated" as required by court rules and statutes; a motion to separate the proceeding into separate proceedings, one for each cause of action set forth in the complaint; a request for a jury trial in the disciplinary proceeding; a motion for the appointment of different referees to hear each distinct cause of action, on the ground that having one referee hear all the evidence on the numerous causes of action is extremely prejudicial; several discovery motions. By order of July 23, 1981 the referee denied the respondent's motions objecting to jurisdiction over his person, to separate the proceedings, for a jury trial and to have different referees appointed to hear each cause of action alleged in the complaint.

On November 25, 1981, the Board filed a second complaint against the respondent, which was ultimately consolidated with the disciplinary proceeding then pending. By order of December 16, 1981, the referee held the re-

spondent in contempt for his refusal to produce materials, correspondence and other matters as required by a subpoena and for his defiance of the referee's order extending time for discovery. The referee permitted the respondent to purge himself of contempt by producing specified materials by a certain date, which the respondent did.

The facts underlying the second disciplinary proceeding are these: the respondent agreed to represent a man in an appeal of his conviction of battery. The client consistently maintained his innocence and suggested that a person of his acquaintance had committed the battery for which he was charged and convicted. The client's parents gave the respondent a $600 retainer, and the acquaintance told the respondent that he would be willing to admit to the battery in order to clear the respondent's client. The respondent advised the acquaintance not to contact the police unless his client's appeal should fail. The acquaintance asked the respondent to represent him in the matter, but the respondent refused because of a conflict of interest.

Subsequently, the respondent contacted the district attorney and informed him that the acquaintance had committed the battery and stated his desire to reach an agreement whereby the appeal would be dismissed and the judgment of conviction vacated, in return for which the acquaintance would enter a plea to a disorderly conduct charge. However, the client's appeal was dismissed for failure to timely file a brief, after an extension of time to file had been granted. The acquaintance then agreed to confess to the battery, and the respondent informed the district attorney and arranged for the taking of a written confession.

By stipulation of the respondent and counsel for the Board, the respondent admitted to having failed to cooperate with the Board in its investigation of this matter,

in violation of SCR 22.07 (2), and admitted to having failed to properly process his client's appeal, which resulted in its dismissal, in violation of SCR 20.32 (3).

On the basis of his findings of fact and conclusions of law, the referee recommended that the respondent's license to practice law in Wisconsin be suspended for one year, that within four months of the date of suspension he pay the sum of $9,000 to be applied toward the costs and fees incurred in the disciplinary action and that for a period of two years after reinstatement he submit to the Board quarterly statements of his trust account, prepared by an accountant. The Board appealed from the referee's recommendation, and the respondent cross-appealed.

The Board appeals not from the referee's findings of fact and conclusions of law but from the recommendation for discipline. The Board argues that a longer period of suspension is necessary, both as a sanction proportionate to the respondent's unprofessional conduct and as an effective deterrent to similar misconduct on the part of other Wisconsin attorneys. On the basis of the numerous violations of the professional responsibility rules, the Board asserts that the respondent has demonstrated a repeated practice or pattern of conduct in failing to cooperate with the Board in its investigations, in violating the trust account rules and in neglecting clients' work.

The respondent argues that the referee committed reversible error in the conduct of the disciplinary proceeding by overruling his objection that the court never obtained jurisdiction over the respondent's person by reason of the Board's failure to serve him with an "authenticated" copy of the complaint and order to answer after first filing those documents with the court and by denying his requests for a jury trial, for separation of the proceedings, for the appointment of different referees to hear

each cause of action alleged in the complaint and for the extension of time for discovery. The respondent also contends that the referee erred in recommending a one-year suspension of his license and the payment of $9,000 toward the costs of the proceeding without there being sufficient evidence in the record of the method for computing or determining those costs.

The respondent's allegations of error in the referee's denial of his requests for jury trial, separation of proceedings, appointment of several referees and for extension of time for discovery are without merit, and we do not address them further. On the issue of personal jurisdiction, the record shows that on May 11, 1981 a copy of the complaint and order to answer was personally served on the respondent by the deputy sheriff of Eau Claire county. Such service complies with SCR 22.11(1), which in turn refers to the prescribed manner of service of a summons under sec. 801.11(1), Stats. An "authenticated" copy of the complaint and order to answer is required only in the event service under SCR 22.11(1) is to be accomplished by mail and then only if personal or substituted service cannot be obtained.

The respondent is correct in his assertion that the referee's recommendation for the payment of costs of the proceeding was made on the basis of an incomplete record, but this is generally the case in attorney disciplinary proceedings for the reason that the referee is required to file with the court a report setting forth findings, conclusions and recommendations for discipline within 30 days of the conclusion of the hearing. SCR 21.09(5). It often happens that at such time the statements of the court reporter and Board counsel for services rendered have not been filed. Of course, the recommendation of the referee as to the imposition of costs on the respondent in an attorney disciplinary proceeding is only a recommendation, which is reviewed by

the court. *Disciplinary Proceedings Against Wheeler,* 108 Wis. 2d 573, 577 (1982).

By memorandum filed by the Board on September 27, 1982, the costs of this proceeding were itemized and amount to $17,358.23, including fees and charges of Board counsel in the amount of $10,115.08. SCR 22.20 provides that all or part of the costs of the disciplinary proceeding may be assessed against the respondent attorney, and at the present time this includes fees and expenses of Board counsel. However, the definition of "costs" set forth in SCR 22.01(6m) was amended to include fees and expenses of Board counsel effective only as to proceedings in which the referee is appointed on or after September 1, 1981. 102 Wis. 2d xix (1981). Here, the referee was appointed on May 15, 1981. Consequently, the maximum permissible costs which may be assessed against the respondent is $7,243.15, and we find it appropriate that this amount be assessed against him.

The respondent further argues that the absence of a court rule providing for the assessment of costs against the Board in a case in which an allegation of misconduct is determined in the respondent attorney's favor denies the attorney equal protection. We have previously addressed this issue and held that the respondent attorney is not entitled to costs and reasonable attorney fees as to allegations of unprofessional conduct which are resolved in favor of the attorney. *Disciplinary Proceedings Against Marcus and Tepper,* 107 Wis. 2d 560, 580 (1982), *Disciplinary Proceedings Against Wheeler, supra,* 577–78 (1982).

On the question of discipline, the respondent argues that the one-year suspension of his license to practice law recommended by the referee is not appropriate because, as to the trust account violations, there was only one case where client funds were misused. The respondent characterizes many of the trust account violations as "in

form only." Those violations of the rules of attorney professional responsibility not involving trust accounts or cooperation with the Board he characterizes as being "of the nature that can occasionally be found in the aggressive give and take of the adversary system of justice."

We reject the respondent's contentions and agree with the Board's position that a one-year suspension of the respondent's license is not sufficient discipline in light of the large number of serious violations of the professional responsibility rules and the nature of the unprofessional conduct in which the respondent was found to have been engaged over a four-year period. Further, we believe that no period of suspension of the respondent's license would be adequate discipline under the circumstances. The respondent has clearly demonstrated his unwillingness to be bound by the ethical standards applicable to all attorneys licensed to practice in this state and his failure or refusal to accept a lawyer's professional responsibilities to clients, to the legal system and to the public. Therefore, while we adopt the findings and conclusions of the referee, we modify his recommendation for discipline accordingly.

It is ordered that the license of Paul Leo Kelly to practice law in Wisconsin is revoked effective December 1, 1982.

It is further ordered that Paul Leo Kelly pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding in the amount of $7,243.15 within 120 days of the date of this order.